UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

XXIII CAPITAL LIMITED,

                                    Plaintiff,

                           -v-

GOODWIN ASSOCIATES MANAGEMENT
ENTERPRISES, INC., *et al.*,

                               Defendants.

-------------------------------------------------------------- X

| |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: 12/20/2024 |

1:17-cv-6910-GHW

<u>MEMORANDUM OPINION &
ORDER</u>

GREGORY H. WOODS, United States District Judge:

## I.     INTRODUCTION

      Aaron Goodwin and Eric Goodwin attempted to sell their sports agency companies, GAME

and GSM, to various corporate entities owned by Christopher Aden and Dorsey James.  A

bankruptcy court later found that the Goodwins were victims of fraud by Aden and James, and

therefore the sale agreement was held to be void and unenforceable.  However, Aden and James had

already financed their acquisition of GAME and GSM with a loan from XXIII Capital Limited.  The

loan agreement required that the borrowers deposit certain payments—typically commissions owed

to the sports agencies by their athletes—into a lockbox account controlled by XXIII Capital.  XXIII

Capital alleges that Aden's and James's entities failed to deposit the required payments into the

lockbox account, that they retained the payments for themselves, and that they transferred a portion

of these payments to the Goodwins, all in violation of the loan agreement.  XXIII Capital also

claims that the borrowers and the Goodwins fraudulently induced XXIII Capital to make the loan

by overstating the amount of these payments they expected to receive.

      After Aden, James, and their entities filed for bankruptcy, the remaining defendants in this

action are GAME, GSM, Aaron Goodwin, and Eric Goodwin.  XXIII Capital seeks to recover from

these defendants the money it claims was wrongfully retained by or transferred to them while Aden and James owned GAME and GSM.  The defendants move to dismiss eleven of XXIII Capital's twelve claims as precluded by the findings of the bankruptcy court and further move to dismiss XXIII Capital's fraud in the inducement claim and breach of fiduciary duty claim for failure to state a claim.

For the reasons that follow, the defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  The findings of the bankruptcy court in the adversary proceeding are given preclusive effect, but these findings do not preclude most of XXIII Capital's claims in this action. Only XXIII Capital's claim that the defendants breached the sale agreement is precluded because the bankruptcy court found that the agreement is void and unenforceable.  Further, XXIII Capital has adequately pleaded that Defendants GAME and GSM fraudulently induced the loan transaction and breached their fiduciary duty to XXIII Capital by misappropriating the funds to be deposited in the lockbox accounts.  XXIII Capital has failed to adequately plead that the Goodwins fraudulently induced the loan transaction.

## II.    BACKGROUND

### A.  Facts[1]

#### 1.  Parties and Relevant Non-Parties

Plaintiff XXIII Capital Limited is a corporation incorporated in the United Kingdom with a principal place of business in the United Kingdom.  Dkt. No. 370, Second Amended Complaint

---

[1] At the motion to dismiss stage, the Court accepts the following facts set forth in the Second Amended Complaint ("SAC"), Dkt. No. 370.  The Court also considers all documents attached as exhibits to the SAC.  *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010) (explaining that in considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint").  And because the motion to dismiss raises collateral estoppel and *res judicata,* the Court takes judicial notice of prior pleadings, orders, transcripts, and judgments in prior proceedings related to this case. *Jianjun Lou v. Trutex, Inc.,* 872 F. Supp. 2d 344, 350 n.6 (S.D.N.Y. 2012) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice.*").

("SAC"), ¶ 13.

Defendants Goodwin Associates Management Enterprises, Inc. ("GAME") and Goodwin Sports Management, Inc. ("GSM") are sports agencies (collectively, the "Goodwin Entities"). GAME is a California corporation with its principal place of business in Oakland, California. *Id.* ¶ 15. GSM is a Washington corporation with its principal place of business in Seattle, Washington. *Id.* ¶ 16. Defendant Aaron Goodwin, a resident of Washington, owned 100 percent of the capital stock of GAME prior to February 22, 2016. *Id.* ¶¶ 31, 32, 51. Defendant Eric Goodwin, a resident of California, owned 100 percent of the capital stock of GSM prior to February 22, 2016. *Id.* In this opinion, Aaron and Eric Goodwin are referred to as the "Goodwins."

Non-party Decade, S.A.C., LLC ("Decade, S.A.C.") is a Delaware limited liability company with its principal place of business in New York, New York. *Id.* ¶ 19. Non-party Gotham S&E Holdings, LLC ("Gotham") has a 100 percent membership interest in Decade, S.A.C. *Id.* ¶ 25. Non-parties Decade, S.A.C. Contracts, LLC; Decade, S.A.C. I, LLC; Decade, S.A.C. II, LLC; Decade, S.A.C. III, LLC; and Decade, S.A.C. Executives, LLC are subsidiaries of Decade, S.A.C. (collectively with Decade, S.A.C and Gotham, "Decade"). *Id.* ¶¶ 20–24. On July 16, 2018, Gotham and Decade, S.A.C. filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware. *Id.* ¶ 26. Non-parties Christopher Aden and Dorsey James are executives of Decade; Aden holds a 100 percent membership interest in Jones Sanders Partnership II, LLC ("Jones Sanders"); and James holds a 100 percent membership interest in DES III & Associates, LLC ("DES III"). *Id.* ¶¶ 27, 28. Jones Sanders and DES III each hold a 50 percent membership interest in Gotham. *Id.* ¶ 25.

### 2. Plaintiff Financed Decade's Acquisition of the Goodwin Entities

On February 22, 2016, the Goodwins and the Goodwin Entities entered into a Share Purchase Agreement, *see* Dkt. No. 370-3 (the "SPA"), with Decade. SAC ¶ 50. Pursuant to the

SPA, the Goodwins sold all of their shares of GAME and GSM to Decade for a purchase price of $35 million. *Id.* ¶ 51. Additionally, Decade signed "Employment Agreements," *see* Dkt. Nos. 370-4, 370-5, with both Aaron and Eric Goodwin, pursuant to which Decade employed the Goodwins as Senior Managing Partners. SAC ¶ 54.

To finance this transaction, Decade, Aden, James, and Plaintiff entered into a loan agreement, *see* Dkt. Nos. 370-1, 370-2 (the "Loan Agreement"). The Loan Agreement defined Decade, GAME, and GSM as the "Borrowers"; Aden and James as "Personal Guarantors"; and Plaintiff as the "Lender." SAC ¶ 33. The Loan Agreement defined certain athlete contracts as "Covered Agreements" and required that payments—typically periodic commission payments— made to Decade pursuant to those Covered Agreements (the "Payments") be deposited into "Lockbox Accounts" controlled by Plaintiff. Loan Agreement § 6.7. Specifically, the Borrowers were required to irrevocably direct each obligor (i.e., athlete) under the Covered Agreements to make all the Payments into a Lockbox Account. *Id.* § 6.7(a). In the event that one of the Borrowers received any Payments from an obligor, the Borrower was required to "immediately deposit the same to a Lockbox Account," and "[u]ntil so deposited, such [Borrower] shall hold all such payments in trust for . . . Lender and shall not commingle such payments with any of its other funds or property." *Id.* The Borrowers also granted Plaintiff a security interest in certain specified collateral (the "Collateral"). *See* Loan Agreement § 9.

"Defendants made a number of representations to XXIII regarding the contracts between the agencies purchased by Decade . . . and the Athletes," including detailed "projected revenue streams." SAC ¶ 137. These were embedded in Annex A-1 of the Loan Agreement. *See* Dkt. No. 370-2. However, Plaintiff alleges that "at the time they made the representations" about the contracts, the Borrowers knew that certain of the contracts had already been terminated; that one basketball player had failed to make one of the required Payments; and that due to a breach of an

Adidas contract, another basketball player was unlikely to make the required Payments in full. SAC ¶ 139.

### 3. The Borrowers Did Not Direct All Required Payments to the Lockbox Accounts

Pursuant to the terms of the Loan Agreement, Plaintiff loaned the Borrowers $20 million. SAC ¶ 34. However, Plaintiff alleges that the Borrowers "continued receiving Payments and did not deposit them into the Lockbox," *id.* ¶ 37, and that Aaron Goodwin "explicitly told the [a]thletes to ignore" Plaintiff's instructions to deposit the Payments into the Lockbox Accounts, *id.* ¶ 7. *See also id.* ¶¶ 74, 79, 84. Plaintiff alleges that the Goodwin Entities diverted funds owed to Plaintiff, *id.* ¶¶ 92, 118, and that the Goodwins personally retained some of the Payments, *id.* ¶¶ 82, 92. Plaintiff alleges that, in total, $10.1 million worth of Payments have not been properly deposited in Plaintiff's Lockbox Account. *Id.* ¶ 66. Plaintiff also alleges that Defendants "have used Payments for their own purposes, including paying [their] executives substantial compensation." *Id.* ¶ 6.

### 4. Decade Filed for Bankruptcy, and the Trustee Commenced the Adversary Proceeding

After Plaintiff filed this action to recover the funds allegedly owed under the Loan Agreement, Decade filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware. *Id.* ¶ 26. On October 15, 2018, the court-appointed Trustee filed a motion for approval of a stipulation between the Trustee and Plaintiff (the "Stipulation"). Dkt. No. 384-2. The Stipulation provided that the Trustee would waive all claims asserted or that could be asserted against Plaintiff in this action. *Id.* at 7.

The Stipulation further required that the Trustee retain "Special Counsel" to "investigate and prosecute" all claims relating to Decade's ownership of the Goodwin Entities, all claims against the Goodwins, and all claims against Aden, James, or any professional athletes. *Id.* at 6. The Special Counsel was the same counsel retained by Plaintiff in this action. *Id.* at 1. The Stipulation also

provided that Plaintiff would make an advance payment to the Trustee on behalf of the estate and that Plaintiff would be "primarily responsible for all fees and costs incurred by Special Counsel or any other professionals retained in connection with the investigation and prosecution of the [c]laims." *Id.* at 6. The Trustee would "confer with [Plaintiff] concerning all aspects of the [c]laims," and "[t]he Trustee shall not accept, without [Plaintiff's] written consent, any settlement of the [c]laims of less than an amount that has been agreed by the parties." *Id.* at 6–7. Additionally, recoveries on the claims would be shared between the Trustee and Plaintiff according to an agreed calculation, under which Plaintiff would receive between 90 and 94 percent of any recovery up to $25 million. *Id.* at 7–8. The bankruptcy court approved the Stipulation on November 5, 2018. Dkt. No. 384-5 at 36–39.

On January 23, 2019, the Trustee, represented by the Special Counsel, commenced an adversary proceeding in the bankruptcy court (the "Adversary Proceeding"). *See* Dkt. No. 384-6. The Trustee sought declaratory judgment that the sale of shares of the Goodwin Entities pursuant to the SPA was valid and further sought the imposition of a constructive trust over any valid GAME or GSM shares held by the Goodwins. *Id.* at 9–11. The Goodwins asserted four counterclaims in the Adversary Proceeding: declaratory judgment that the SPA was void for fraud in the execution; declaratory judgment that the SPA was void for fraudulent misrepresentation; declaratory judgment that the SPA was void for fraudulent inducement; and declaratory judgment that the SPA was unenforceable for lack of mutual assent, failure to satisfy the required closing conditions, and material breach. Dkt. No. 384-7 at 25–30.

### 5. Summary Judgment and Trial

On January 29, 2020, the bankruptcy court entered a summary judgment order (the "Summary Judgment Order") granting the Trustee summary judgment on the Goodwins' counterclaims for fraud in the execution, fraudulent misrepresentation, and fraudulent inducement.

Dkt. No. 386-5 at 2–3. The bankruptcy court determined that "[t]he sole issues reserved for trial are substantial performance and ratification" of the SPA. *Id.* at 31. Accordingly, in the lead-up to trial, the bankruptcy court entered an order excluding "evidence of fraud or misrepresentation relating solely to the SPA." Dkt. No. 386-6 at 33.

However, after Aaron Goodwin testified under direct examination on the first and second days of trial on October 12 and 13, 2021, the bankruptcy court "believ[ed] that it made an error" in its Summary Judgment Order and *sua sponte* vacated the Summary Judgment Order on October 13, 2021. Dkt. No. 386-8. The bankruptcy court therefore ordered a trial on the merits of all claims and counterclaims. *Id.* at 3. On October 14, 2021, counsel for the Trustee requested a continuance of 12 days to prepare for the expanded trial, but the bankruptcy court denied the request. Dkt. No. 384-13 at 4–11. However, the Trustee was given an opportunity to reconsider any pretrial stipulations and to supplement their affirmative case after resting. *Id.* at 10–11. Additionally, the Trustee had over ten days to prepare for cross-examining Aaron Goodwin following his direct examination and was granted leave to call three additional witnesses (not included in the original witness list) at a hearing convened remotely several weeks later. *Id.* at 11 (granting the Trustee the right to cross-examine the Goodwins and supplement their affirmative case until October 25, 2021); Dkt. No. 388-1 at 5 (discussing efforts to obtain remote testimony). The trial continued on October 14, 15, 26, and 28 and November 16, 2021.

### 6. The Bankruptcy Court Issued Its Declaratory Judgment Opinion and Vacated the Stipulation Order

On December 27, 2021, the bankruptcy court issued its opinion (the "Declaratory Judgment Opinion") finding in favor of the Goodwins on all claims and counterclaims and against the Trustee. Dkt. No. 384-9. In summary, the bankruptcy court found that the Goodwins were the "innocent victims" of a fraud "by Christopher Aden, aided and abetted by his partner, Dorsey James." Declaratory Judgment Opinion at 1. "Aden repeatedly lied to the Goodwins" and "fraudulently

7

altered" the agreements to contain provisions that "Aden knew were unacceptable to the Goodwins." *Id.* "[T]he entire business arrangement was void and unenforceable from its inception due to Aden's fraud." *Id.* at 2.[2]

Other findings of fact relevant to the present motion are as follows: "[t]he Goodwins were not parties to the loan agreement between Decade and [Plaintiff]," *id.* ¶ 182; "[t]he Goodwins were never sent a copy of the loan agreement between Decade and [Plaintiff]," *id.* ¶ 183; neither Plaintiff nor Plaintiff's counsel for the transactions communicated with the Goodwins prior to the closing of the SPA, *id.* ¶¶ 90, 91.

On February 17, 2022, the bankruptcy court vacated its order approving the Stipulation because as "[Plaintiff's] improper behavior in connection with the Goodwin Entities Transaction has come to light, Special Counsel cannot, on one hand, represent the Trust, and then, on the other hand, negotiate *against* the Trust as counsel to [Plaintiff]"; "[t]he interests of the Trust and [Plaintiff] have diverged." Dkt. No. 386-13 ¶ 22. The court ordered that "Special Counsel is hereby disqualified from further representing the Trustee and [Plaintiff] in connection with this litigation." *Id.* ¶ 35.

On February 9, 2023, based on the Declaratory Judgment Opinion, the bankruptcy court formally entered judgment against the Trustee and in favor of the Goodwins in the Adversary Proceeding. Dkt. No. 384-10. The Trustee appealed the Declaratory Judgment Opinion but later voluntarily dismissed the appeal pursuant to a settlement agreement with the parties. Dkt. Nos. 386-14, 386-15. On February 23, 2023, Plaintiff appealed the bankruptcy court's order vacating the

---

[2] The Declaratory Judgment Opinion held that the SPA is void and unenforceable on multiple grounds. First, "there was no mutual consent to contract and no contract formation between Decade and the Goodwins" because Decade "concealed" edits and other transactional documents from the Goodwins. Declaratory Judgment Opinion ¶¶ 308–10. Second, "Decade failed to satisfy each of the closing conditions on or prior to the SPA's closing." *Id.* ¶ 314. Third, "Decade's fraudulent misrepresentations render the SPA voidable." *Id.* ¶ 285. Fourth, "Decade's fraudulent inducements render the SPA voidable." *Id.* ¶ 302. Fifth, "[b]ecause the Employment Agreements are an indispensable part of an integrated contract that includes the SPA, Decade's fraud in the execution of the Employment Agreements renders the SPA void." *Id.* ¶ 259.

Stipulation and "all rulings that led to the [order]," including the Declaratory Judgment Opinion. Dkt. No. 386-16 at 1. The appeal is fully briefed and pending before the U.S. District Court for the District of Delaware. *XXIII Capital Limited v. Goodwin*, No. 1:23-CV-209 (MN).

### B. Procedural History

Plaintiff commenced this action on September 12, 2017. Dkt. No. 1. On September 27, 2017, the Court granted a preliminary injunction against Defendants, enjoining Defendants from "diverting, secreting, hiding, wasting, spending, appropriating, or subverting any Collateral, including future receivables and the payments there from, including diverting Payments from the account identified in Plaintiff's March 21, 2017 letter (Complaint Exhibit F), or from any Lockbox account identified in the Loan Agreement." Dkt. No. 52 at 2. On July 18, 2018, after Decade, James, and Aden filed for bankruptcy, the Court stayed this case as to the bankrupt entities pending resolution of the bankruptcy proceedings. Dkt. No. 263. On September 14, 2018, the Court stayed this action in its entirety to allow the bankruptcy court to adjudicate the parties' dispute as to the ownership rights over the Goodwin Entities. Dkt. No. 293. The Court lifted the stay on April 18, 2024. Dkt. No. 362. The parties stipulated to the voluntary dismissal of all claims by and against the Decade entities pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) and Fed. R. Civ. P. 41(a)(1)(A)(i). Dkt. Nos. 368, 369.

Plaintiff filed the SAC on May 20, 2024. Dkt. No. 370. Defendants filed a motion to dismiss on July 16, 2024. Dkt. No. 382. Defendants filed a memorandum of law in support of their motion on the same day. Dkt. No. 383 ("MOL"). Plaintiff filed its opposition on August 13, 2024. Dkt. No. 385 ("Opposition"). Defendants filed a reply on August 27, 2024. Dkt. No. 387 ("Reply").

### III.    DISCUSSION

#### A.  Collateral Estoppel

##### 1.  Choice of Law

The Court applies the federal law of collateral estoppel to this motion.  But the path to that conclusion is not as direct as the parties and the Court might prefer.  The Court finds no clear precedent directing what law to use to determine the preclusive effect of a federal bankruptcy court decision predicated on state law.  On the one hand, "federal diversity judgments should be accorded the same preclusive effect that would be applied by state courts in the state in which the federal diversity court sits."  *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir. 2021) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507–08 (2001)).  Similarly, courts apply the preclusion law of the rendering forum when the prior judgment was made pursuant to supplemental jurisdiction.  *See Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989) ("A federal court sitting in diversity or adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state."); *CBF Industria De Gusa S/A v. AMCI Holdings, Inc.*, 650 F. Supp. 3d 228, 254 (S.D.N.Y. 2023) (applying the forum state's choice of law rules because subject matter jurisdiction "is premised on the [c]ourt's supplemental jurisdiction"); *Access 4 All Inc. v. Trump Intern. Hotel and Tower Condo.*, No. 04-CV-7497 (KMK), 2007 WL 633951, at *3 (S.D.N.Y. Feb. 26, 2007) (same); *In re Adamo*, 560 B.R. 642, 647 (Bankr. E.D.N.Y. 2016) (same).  On the other hand, courts "must apply federal law to determine the preclusive effect of a prior federal question judgment."  *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 41–42 (2d Cir. 1986).  The issue is that "[t]he bankruptcy decision here applied state law but did not arise under diversity jurisdiction" or supplemental jurisdiction.  *Tutor Perini Bldg. Corp. v. New York City Regl. Ctr., LLC*, 525 F. Supp. 3d

482, 513 n.17 (S.D.N.Y. 2021).[3]

The parties in this case take different positions on this thorny question. Defendants contend that California law governs the application of collateral estoppel because the bankruptcy court applied California law. MOL at 11 n.2. This position is inconsistent with established choice of law rules, which "require[s] the federal courts to give state judgments such collateral estoppel and *res judicata* effect as would the courts of the *rendering state*," not the state whose laws govern the claims. *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 42 n.3 (2d Cir. 1986) (citations omitted) (emphasis added). Plaintiff contends that because the bankruptcy court's decision was a "federal judgment," federal preclusion law applies. Opposition at 16 n.4. This overly broad position ignores the Supreme Court's decision in *Semtek*, applying "the law that would be applied by state courts" when the federal judgment is made pursuant to diversity jurisdiction. Neither party recognized that if the Court were to analogize the Adversary Proceeding to a diversity case or to supplemental jurisdiction, the Court would look to Delaware law because the bankruptcy court that adjudicated the Adversary Proceeding sits in Delaware.

Drawing from the reasoning in *Semtek* and *Gelb*, the Court finds the analogy to diversity or

---

[3] In such a situation, the *Tutor Perini* court decided to apply New York law because "the substantive law governing both the issue before the bankruptcy court and the issue pending [in the district court] is New York state law." *Tutor Perini*, 525 F. Supp. 3d at 513 n.17. However, under similar circumstances, the Second Circuit appears to have applied federal preclusion law in holding that a bankruptcy court's findings on discrimination claims had preclusive effect over the same issues in a federal case. *Falbaum v. Pomerantz*, 19 Fed. App'x 10, 12 (2d Cir. 2001). Though, the bankruptcy court in *Falbaum* analyzed the discrimination claims under both federal and state laws simultaneously. *In re Leslie Fay Companies, Inc.*, 212 B.R. 747, 776 (Bankr. S.D.N.Y. 1997), *aff'd*, 222 B.R. 718 (S.D.N.Y. 1998), *aff'd sub nom. Falbaum v. Leslie Fay Companies, Inc.*, 182 F.3d 899 (2d Cir. 1999).

The Court finds that none of this precedent controls this case. Unlike in *Tutor Perini*, the law that governed the issues before the bankruptcy court (California law) is different than the law governing the claims before this Court (New York law). And even if the same state law governed both proceedings, the *Tutor Perini* court's reasoning for applying that state's law for preclusion analysis does not cohere with collateral estoppel doctrine, which "require[s] the federal courts to give state judgments such collateral estoppel and *res judicata* effect as would the courts of the *rendering state*," not the state whose laws govern the claims. *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 42 n.3 (2d Cir. 1986) (citations omitted) (emphasis added). Here, the rendering state would be Delaware, not California or New York, because Gotham and Decade filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware. SAC ¶ 26.

*Falbaum* does not control either because unlike in *Falbaum*, the bankruptcy court's judgment in the Adversary Proceeding was governed exclusively by California law, not federal law. Declaratory Judgment Opinion ¶¶ 234, 243.

supplemental jurisdiction apt.  Like in diversity cases and for state law claims adjudicated under a district court's supplemental jurisdiction, the bankruptcy court in the Adversary Proceeding adjudicated claims under state law.  Declaratory Judgment Opinion ¶¶ 234, 243.  Even though the bankruptcy court's role in bankruptcy proceedings arises from federal law, these state law claims were resolved by the court because they were "related to" the bankruptcy proceeding, 28 U.S.C. § 1334(b), much like state law claims adjudicated under supplemental jurisdiction.  Additionally, the jurisdiction of the bankruptcy court over such "related" proceedings is "original but not exclusive." *Id.*  Thus, as the Supreme Court warned in *Semtek*, applying a federal standard for preclusion "would produce the sort of forum-shopping and inequitable administration of the laws that *Erie* seeks to avoid."  531 U.S. at 508–09.  Therefore, applying the *Semtek* choice-of-law rule for diversity and supplemental jurisdiction cases to the Adversary Proceeding would be reasonable.

In this case, however, the Court applies federal collateral estoppel law for a few reasons.  First, the parties' briefs contain citations to California, New York, and federal law, not Delaware law.  The parties concede that California law, New York law, and federal law are "substantially similar," Opposition at 16 n.4, so "the Court [may] proceed on the basis of implied consent to apply federal law to the preclusive effect" of the Adversary Proceeding.  *CBF Industria De Gusa S/A v. AMCI Holdings, Inc.*, 650 F. Supp. 3d 228, 241 (S.D.N.Y. 2023); *see also Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) ("The parties' briefs assume that New York substantive law governs the issues . . . presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law.").  Second, "the test for determining collateral estoppel is substantially the same" under Delaware and federal law.  *Harper v. Delaware Valley Broadcasters, Inc.*, 743 F. Supp. 1076, 1082 n.3 (D. Del. 1990), *aff'd*, 932 F.2d 959 (3d Cir. 1991); *see also Marine v. State*, 624 A.2d 1181, 1190 (Del. 1993) ("Delaware law generally coincides with federal law in the interpretation and application of principles of double jeopardy and collateral estoppel.").  Third, courts in other circuits

that have faced this difficult question have come out on the side of applying federal preclusion law to a bankruptcy proceeding adjudicating state law claims. *See Santiago-Martinez v. Fundacion Damas, Inc.*, 93 F.4th 47, 51 (1st Cir. 2024) ("Federal common law governs the question of issue preclusion here because the finding Fundación argues is entitled to preclusive effect was made by a federal bankruptcy court."). *Harper*, 743 F. Supp. at 1082 ("In this case, the rendering forum was a federal bankruptcy court. Thus, it appears that federal law of collateral estoppel should be applied.").[4]

## 2. Legal Standard

In the Second Circuit,

[f]our elements must be met for collateral estoppel to apply: (1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been "full and fair opportunity" for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits.

*C. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995) (citing *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir.1986) (setting forth four-part test), *cert. denied,* 480 U.S. 948 (1987)). "Collateral estoppel applies only against a party to a previous adjudication and that party's 'privies.'" *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Intl. B.V. v. Schreiber*, 327 F.3d 173, 184 (2d Cir. 2003).

---

[4] The Court's position in this opinion is the result of its inability to develop a meaningful distinction between the resolution of state law claims by a bankruptcy court and the resolution of state law claims by a district court exercising supplemental jurisdiction. However, the Court believes that the simple rule adopted by the First Circuit—in which federal estoppel rules would apply to all decisions made by a bankruptcy court—would be a much more efficient approach. Applying federal preclusion law is also compatible with "federal interests," *Semtek*, 531 U.S. at 509, specifically the bankruptcy court's "important procedural interest," § 4472 Effect of State Law on Federal Res Judicata Rules, 18B Fed. Prac. & Proc. Juris. § 4472 (3d ed.), in finality with respect to the rights of interested parties to the bankruptcy estate so that the court can distribute the property and interests in the estate. *See also* Restatement (Second) of Judgments § 87 (1982) ("The principle of finality is an essential part of a court's authority. . . . The source of the federal courts' authority is in Articles I and III of the Constitution. It is therefore appropriate to hold that, at least in the absence of some other provision by Congress, the effects of a federal judgment are a legal implication of those provisions.").

### 3.  Plaintiff and the Trustee Were in Privity

Plaintiff was in privity with the Trustee such that it would not violate "fundamental notions of due process" to give preclusive effect to the bankruptcy court's judgment. *Stichting*, 327 F.3d at 184.  "[A] determination in a prior judicial proceeding collaterally estops a claim by a nonparty only if that nonparty was represented by a party to the prior proceeding, or exercised some degree of actual control over the presentation on behalf of a party to that proceeding." *Id.* at 184–85.  "We recognize privity based on representation only if the interests of the person alleged to be in privity were 'represented [in the prior proceeding] by another vested with the authority of representation.'" *Id.* at 185 (quoting *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000)).  "In those cases where we have applied the doctrine of privity to a person who was not represented by a fiduciary or agent in the previous litigation, we have found that that person nonetheless exercised some degree of actual control over the presentation of a party's case at the previous proceeding." *Id.*

Plaintiff's interests were adequately represented in the Adversary Proceeding.  The Trustee, through the Special Counsel, was litigating to keep GAME and GSM in the estate, and pursuant to the Stipulation, Plaintiff would have recovered over 90 percent of whatever the Trustee recovered on those claims.  Stipulation at 7–8.

Plaintiff also exercised a significant degree of actual control over the Trustee's case in the Adversary Proceeding.  Plaintiff financed the Trustee's litigation against the Goodwins; Plaintiff appointed its counsel of record in this action as the Trustee's Special Counsel; the Trustee was required to "confer with [Plaintiff] concerning all aspects of the [Adversary Proceeding]";[5] and

---

[5] While the Stipulation requires that "for the avoidance of doubt, the Professionals shall take their direction from the Trustee," this does not bar the application of collateral estoppel. Dkt. No. 384-2 at 6.  The federal standard for applying preclusion to a non-party who was involved in the prior proceeding is "some degree of actual control" or "substantial[] participat[ion]," not total control. *Stichting*, 327 F.3d at 185 (quoting *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.,* 56 F.3d 359, 368–69 (2d Cir.1995)).  "One who . . . assists in the prosecution or defense of an action in aid of

Plaintiff's consent was required for the Trustee to accept a settlement of the claims in the Adversary Proceeding. *Id.* at 6–7. Additionally, Plaintiff and Plaintiff's counsel provided testimony for the Adversary Proceeding. Dkt. No. 384-8 at 43. These facts collectively support the conclusion that Plaintiff exercised actual control over the Trustee. *See Hallinan v. Republic Bank & Tr. Co.*, No. 06-CV-185 (HB), 2007 WL 39302, at *9 (S.D.N.Y. Jan. 8, 2007) ("It is undisputed that Hallinan paid for much, if not all, of Benefits' litigation costs . . . . It is undisputed that Hallinan was sent correspondence relating to the arbitration . . . . It is also undisputed that Hallinan testified as a witness at the prior arbitration."); *compare id.* at *10 ("There is no evidence that Hallinan directed Benefits or Benefits' counsel . . . [or] that correspondence was sent to Hallinan for review or comment, as opposed to keeping him abreast of the litigation, in a sense preparing him as a witness and interested party."). *See also Alpert's Newsp. Delivery Inc. v. The New York Times Co.*, 876 F.2d 266, 270 (2d Cir. 1989) ("Despite the fact that the MRA was not a named party in either action, it was the admitted mastermind and financier of the *Belfiore* litigation and it is providing similar tactical and financial help in the instant case."); *Stichting*, 327 F.3d at 185 ("Preclusion is thus found to apply against a person who, although not party to the previous litigation 'with the guidance of [his] law firm, formulated an overarching strategy for the two actions.'" (quoting *Ruiz v. Comm'r of Dep't of Transp.*, 858 F.2d 898, 903 (2d Cir.1988))). *Compare Henry E. and Nancy Horton Bartels Tr. ex rel. Cornell U. v. U.S.*, 88 Fed. Cl. 105, 116 (2009), *aff'd sub nom. Bartels Tr. for benefit of Cornell U. ex rel. Bartels v. U.S.*, 617 F.3d 1357 (Fed. Cir. 2010) (relying on the fact that "[t]he Cornell Trust did not fund *Bartels–UNH Trust*, nor does the record indicate that the Cornell Trust formulated litigation strategy for that case," even though the parties shared "common interests" and "the same lawyer"). Therefore, Plaintiff and the Trustee were in privity such that Plaintiff is bound by the judgment of

---

some interest of his own is as much bound as he would be if he had been a party to the record." *Montana v. U. S.*, 440 U.S. 147, 154 (1979) (ellipses omitted). Therefore, the fact that the Trustee had ultimate authority to direct the litigation before the bankruptcy court does not itself negate the fact that Plaintiff exercised significant control.

the bankruptcy court in the Adversary Proceeding.

The fact that approval of the Stipulation was later vacated does not affect the privity analysis. The Court's consideration is whether Plaintiff exercised "actual control over the presentation of a party's case at the previous proceeding," not whether Plaintiff had actual control at the time the prior judgment was issued. *Stichting*, 327 F.3d at 185. Here, the Stipulation was in effect through the litigation of the Adversary Proceeding and was only vacated *after* the bankruptcy court issued the Declaratory Judgment Opinion. *See* Dkt. No. 386-13. It is of no consequence that the Special Counsel no longer represented the Trustee at the time the bankruptcy court "formally entered judgment" "based on the Declaratory Judgment Opinion." Opposition at 14. To hold otherwise would leave a fairly large loophole for privies hoping to get another bite at the apple by terminating their relationship between the time a judge issues disadvantageous findings and the time she enters formal judgment.

### 4. The Trustee Had a Full and Fair Opportunity To Litigate the Issues

The Trustee had a full and fair opportunity to litigate the issues relating to the validity of the SPA during the Adversary Proceeding. "Our inquiry with regard to the 'full and fair opportunity' prong of the collateral estoppel doctrine is whether petitioner . . . was fully able to raise the same factual or legal issues as she asserts here." *LaFleur v. Whitman*, 300 F.3d 256, 274 (2d Cir. 2002); *see also Anthan v. Professional Air Traffic Controllers Organization*, 672 F.2d 706, 710 (8th Cir. 1982) ("The meaning of 'full and fair opportunity' in this context is whether [the party] was denied procedural, substantive, or evidentiary opportunities to be heard."). Courts have found that procedural irregularities do not deprive a party of a full and fair opportunity to litigate a prior proceeding. *See, e.g., Ward v. Harte*, 794 F. Supp. 109, 117 (S.D.N.Y. 1992) ("[D]espite any procedural irregularities which may have occurred, the defendant's side of the story . . . was fully aired at the hearing."); *In re Chateaugay Corp.*, 111 B.R. 399, 407–08 (S.D.N.Y. 1990), *aff'd*, 945 F.2d 1205 (2d Cir. 1991) (finding

that a full and fair opportunity existed despite the bankruptcy court shortening the time for a response to a summary judgment motion); *Erickson v. Horing*, No. 99-CV-1468 (JRT) (FLN), 2001 WL 1640142, at *10 (D. Minn. Sept. 21, 2001) ("Plaintiffs' allegation that they did not have a full and fair opportunity to litigate the fraud issue in the state court because they were not permitted any discovery does not preclude the [c]ourt from finding that an issue was 'litigated' for collateral estoppel purposes."); *Tobias v. First City Nat. Bank and Tr. Co.*, 709 F. Supp. 1266, 1270 (S.D.N.Y. 1989) (holding that "although the state proceeding was conducted on an expedited basis"—limiting discovery—"there is no evidence that it lacked any of the requisite procedural safeguards"); *Horton v. Westling*, 284 F. Supp. 3d 213, 218–19 (N.D.N.Y. 2018), *aff'd*, 765 Fed. App'x 531 (2d Cir. 2019) (finding a full and fair opportunity for a student to challenge a suspension when the hearing was reopened after additional evidence was found).

By this standard, the Trustee was afforded a full and fair opportunity to litigate the issues related to the sale and ownership interests in GAME and GSM as well as the validity of the SPA. The bankruptcy court held a trial with seven days of live testimony. Declaratory Judgment Opinion ¶ 7. The Trustee was allowed to reopen its case and call additional witnesses after the court expanded the triable issues. Dkt. Nos. 388-1, 388-3. While the bankruptcy judge did abruptly expand the trial without giving the litigants as much notice as this Court might have, the Trustee's "side of the story . . . was fully aired" at the trial. *Ward*, 794 F. Supp. at 117. And the Trustee had multiple weeks to prepare to cross-examine Aaron Goodwin and to present several of its additional witnesses. Unlike in *Tobias*, where the prior proceeding was expedited to the detriment of discovery, the parties in the Adversary Proceeding engaged in extensive discovery prior to trial and had all of the summary judgment materials and exhibits before them when they tried the relevant issues. The Trustee had "a full record," and Plaintiff does not dispute that all "the issues were raised" at trial. *In re Chateaugay Corp.*, 111 B.R. at 408. *Cf. Vega v. State U. of New York Bd. of Trustees*, 67 F. Supp. 2d

324, 336 (S.D.N.Y. 1999) ("Vega does not explain what discovery he needed and consequently does not demonstrate that without discovery he was denied a full and fair opportunity to litigate.").  In sum, the procedural irregularities that resulted from the decision to vacate the Summary Judgment Order—namely the shortened time to prepare for presenting the case—do not rise to the level of depriving the Trustee of a full and fair opportunity to litigate the case.  *Cf. In re Chateaugay Corp.*, 111 B.R. at 407 (finding it permissible for the bankruptcy court to shorten the time to respond to a summary judgment motion).

### 5. The Bankruptcy Court's Final Judgment on the Merits Was Valid

The bankruptcy court validly decided the issues relating to the SPA on the merits.  Plaintiff contends that the issues were not properly decided because "*none* of the findings [in the Declaratory Judgment Opinion] were the product of the [b]ankruptcy [c]ourt's own judgment."  Opposition at 21–22 (emphasis in original).  In support of this assertion, Plaintiff cites the fact that the Declaratory Judgment Opinion included 98 percent of the findings of fact proposed by the Goodwins without any substantive changes.  *Id.* at 22; *see* Dkt. No. 386-12.  While Plaintiff correctly notes that the Second Circuit does not "condone the verbatim adoption of proposed findings of fact," the court in the very next breath stated that it is "[n]onetheless . . . bound to uphold the findings of the court below unless, on the basis of the entire record, . . . they are clearly erroneous."  *Allied Chem. Intern. Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 481 (2d Cir. 1985); *Apex Oil Co. v. Vanguard Oil & Serv. Co. Inc.*, 760 F.2d 417, 421 (2d Cir. 1985) ("[D]istrict judges may choose to 'adopt findings offered by a party to an action' and that such choice does not necessarily mean that the district judge failed carefully to review the evidence in the case." (citing *Citizens for Balanced Env't and Transp., Inc. v. Volpe*, 650 F.2d 455, 462–63 (2d Cir.1981))).  While the Court does not endorse the bankruptcy court's broad adoption of the Goodwins' proposed findings of fact, this procedure alone does not render the Declaratory Judgment Opinion invalid.  Nor does it demonstrate that the

bankruptcy court failed to exercise its own independent judgment in reaching the conclusions that it did, particularly in light of the court's credibility determinations, which the court added to the proposed findings.  Declaratory Judgment Opinion ¶ 223.

Plaintiff also argues that the bankruptcy court did not exercise independent judgment because the Declaratory Judgment Opinion made conclusions of law that differed from the vacated Summary Judgment Order.  Opposition at 22–23.  While the Court is not convinced that the contradictions cited by Plaintiff are irreconcilable given that the bankruptcy court engaged in fact finding between the two judgments,[6] the Court takes no position on these purported contradictions because this is not a court of review, and these particular issues are not properly briefed before this Court.  Plaintiff seemingly has had an opportunity to raise its objections to the bankruptcy court's legal determinations in its pending appeal.  *See* Opposition at 15.  This Court only holds that Plaintiff has not proffered a sufficient showing that the bankruptcy court's determinations in the Declaratory Judgment Opinion were not validly and independently formed.

### 6.  The Issues Decided in the Adversary Proceeding Resolve Only the Eleventh Cause of Action in the SAC

The issues decided in the Adversary Proceeding, namely that the SPA is unenforceable, defeats Plaintiff's eleventh cause of action for breach of contract.  However, Defendants have failed to show "with clarity and certainty" that the remaining claims turn on issues identical to those decided in the Adversary Proceeding.  *Postlewaite v. McGraw-Hill*, 333 F.3d 42, 49 (2d Cir. 2003).

The eleventh cause of action, alleging that Defendants "materially breached the Share Purchase Agreement," SAC ¶ 187, fails as a result of the bankruptcy court's determination that the SPA is unenforceable, Declaratory Judgment Opinion ¶ 305.  The Declaratory Judgment Opinion

---

[6] The Court notes that the fact that the bankruptcy court changed its prior positions does not suggest a lack of independent judgment but rather reflects an open-mindedness and a willingness to reconsider the legal issues when presented with new evidence.  Whether the bankruptcy court was correct in the first instance is not for this Court to determine on this motion.

held that the SPA is void and unenforceable on multiple grounds.  First, "there was no mutual consent to contract and no contract formation between Decade and the Goodwins" because Decade "concealed" edits and other transactional documents from the Goodwins.  *Id.* ¶ 308–10.  Second, "Decade failed to satisfy each of the closing conditions on or prior to the SPA's closing."  *Id.* ¶ 314.  Third, "Decade's fraudulent misrepresentations render the SPA voidable."  *Id.* ¶ 285.  Fourth, "Decade's fraudulent inducements render the SPA voidable."  *Id.* ¶ 302.  Fifth, "[b]ecause the Employment Agreements are an indispensable part of an integrated contract that includes the SPA, Decade's fraud in the execution of the Employment Agreements renders the SPA void."  *Id.* ¶ 259.  Therefore, giving preclusive effect to the bankruptcy court's judgment that the SPA is void and unenforceable defeats Plaintiff's claim for breach of the SPA.

Otherwise, Defendants fail to show with clarity and certainty that the bankruptcy court's findings defeat any of Plaintiff's other claims.  Contrary to Defendants' argument, Plaintiff's second cause of action for replevin does not necessarily arise out of the SPA.  While the SAC's second cause of action references "the Transactions, . . . which grant to XXIII a first priority security interest in and lien on virtually all the Borrowers' assets," SAC ¶ 122, the most reasonable inference is that this allegation refers to the Loan Agreement.  The Loan Agreement is what allegedly created Plaintiff's security interest in the Collateral.  Dkt. Nos. 370-1, 370-2.  Therefore, Plaintiff's claim for replevin plausibly arises not out of the SPA, which the bankruptcy court held to be void, but rather out of the Loan Agreement.

Further, Defendants have failed to show that the Declaratory Judgment Proceeding precludes enforcement of the Loan Agreement, and thus Defendants have failed to show that the claims arising out of the Loan Agreement should be dismissed.  Defendants argue that the finding that the SPA is void necessarily voids the Loan Agreement because when Mr. James signed the Loan Agreement on behalf of the Goodwin Entities, he lacked the valid authority to do so because his

control over the Goodwin Entities was fraudulent.  MOL at 14–15.  However, while Defendants are

able to argue that Mr. James lacked the actual authority to bind the Goodwin Entities,[7] Defendants

have not provided an argument as to why Mr. James lacked apparent authority to enter into the

Loan Agreement.  Mr. James signed the Loan Agreement on behalf of the Goodwin Entities as

"President."  Dkt. No. 370-2.  Defendants make no showing that at the time Mr. James entered into

the Loan Agreement, he was not held out to be the president of the Goodwin Entities or that he

otherwise lacked apparent authority to bind the entities, even though his title was acquired through

purported fraud.  *Cf. Minskoff v. Am. Exp. Travel Related Services Co., Inc.*, 98 F.3d 703, 709 (2d Cir.

1996) ("[T]he negligent acts or omissions of a cardholder may create apparent authority to use the

card in a person who obtained the card through theft or fraud.").  For this reason, the Court cannot

at this time find that the Goodwin Entities should not be bound by the Loan Agreement even if the

SPA is held void *ab initio.*

While the bankruptcy court held that the Goodwins were not parties to, and were never sent

a copy of, the Loan Agreement, this holding does not preclude Plaintiff's tort claims against the

Goodwins.  *See* Declaratory Judgment Opinion ¶¶ 182–84.  Neither the second cause of action for

replevin, the sixth cause of action for money had and received, the eighth cause of action for

tortious interference with contract, the ninth cause of action for conversion, nor tenth cause of

action for unjust enrichment require that the Goodwins be parties to the Loan Agreement to be

properly pleaded.[8]  Defendants therefore fail to state with clarity and certainty how the bankruptcy

---

[7] The Court does not take a position on this because Defendants offer no case law to support the notion that a contract void *ab initio* extinguishes any actual authority created by the contract and exercised prior to the determination that the contract is void.

[8] "The elements of money had and received largely mirror those of unjust enrichment: '(1) the defendant received money belonging to the plaintiff, (2) the defendant benefitted from receipt of the money, and (3) under principles of equity and good conscience, the defendant should not be permitted to keep the money.'"  *Cohen v. Dunne*, No. 15-CV-3155 (DAB), 2017 WL 4516820, at *5 (S.D.N.Y. Sept. 27, 2017) (quoting *Lebovits v. Bassman*, 120 A.D.3d 1198, 1199 (N.Y. App. Div. 2d Dep't 2014)).  "Under New York law, the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual

court's holdings preclude these claims.

### B. Plaintiff Has Adequately Pleaded Fraudulent Inducement as to the Goodwin Entities but Not as to the Goodwins

Plaintiff has adequately pleaded a claim for fraudulent inducement against the Goodwin

Entities but not against the Goodwins individually. "To state a claim for fraud in the inducement,

the party must allege: (i) a material misrepresentation of a presently existing or past fact; (ii) an

intent to deceive; (iii) reasonable reliance on the misrepresentation by [plaintiffs]; and (iv) resulting

damages." *Johnson v. Nextel Commun., Inc.*, 660 F.3d 131, 143 (2d Cir. 2011) (citing *Ross v. Louise Wise*

*Servs., Inc.*, 8 N.Y.3d 478, 488 (2007)). Additionally, Fed. R. Civ. P. 9(b) requires that the complaint

"state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy that

requirement, the complaint must "(1) specify the statements that the plaintiff contends were

fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4)

explain why the statements were fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87,

99 (2d Cir. 2007) (citing *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)).

Plaintiff has adequately pleaded that the Borrowers made misrepresentations relating to the

Loan Agreement. The SAC alleges that the signatories to the Loan Agreement made representations

"reflected in Annex A-1 of the Loan Agreement," which described agreements between the

Borrowers and their clients and "projected revenue streams in detail." SAC ¶ 137. Plaintiff alleges

that these representations were false because at the time the Loan Agreement was executed, certain

of the agreements "were already terminated" or were unlikely to be paid out in full. *Id.* ¶ 139.

Plaintiff alleges that representatives of the Borrowers knew this at the time they entered into the

---

breach of the contract'; and (5) 'damages resulting therefrom.'" *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996)). "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's right." *Coughlan v. Jachney*, 473 F. Supp. 3d 166, 200 (E.D.N.Y. 2020) (quoting *Pappas v. Tzolis*, 20 N.Y.3d 228, 234 (2012)). "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006).

Loan Agreement.  *Id.*; *see also id.* ¶ 9.

While the SAC does not identify the speaker of the alleged misrepresentations individually, Plaintiff has adequately pleaded that the Goodwin Entities are responsible for the statements. Section 4 of the Loan Agreement states that "each Loan Party makes the following representations and warranties to Lender."  The Loan Agreement defines the "Loan Parties" as "collectively, Borrowers and Corporate Guarantors," in other words Decade, GSM, and GAME.  Loan Agreement § 1(b).  Among the representations made by "each" of these entities is that "Annex A-1 sets forth a true and complete list of all payments due and owing to each Borrower by the Obligor." Loan Agreement § 4.18.  Therefore, the SAC adequately alleges that the Goodwin Entities are accountable for any misrepresentations of the payments owed in Annex A-1.  *See* SAC ¶ 9 ("The Borrowers were . . . aware at the time that it entered into the Transactions that the Payments from those Athletes would not be made.  But the Borrowers never disclosed that fact . . . and instead misrepresented that these Payments would be collectable.").

The SAC does not, however, adequately plead that the Goodwins were responsible for the alleged misrepresentations.  They were not parties to the Loan Agreement, individually or on behalf of the Goodwin Entities.  Dkt. No. 370-2.  Plaintiff contends that the Goodwins can be alleged to be involved in the statements "as the owners of GAME and GSM."  Opposition at 26.  However, on the date the parties entered into the Loan Agreement, the Goodwins transferred their ownership interests in the Goodwin Entities to Decade.  Dkt. Nos. 370-2, 370-3.  And, according to the Declaratory Judgment Opinion, Plaintiff and Plaintiff's counsel in connection with the Loan Agreement "never communicated with the Goodwins prior to the closing of the [SPA]." Declaratory Judgment Opinion ¶ 90–91.  Further, the bankruptcy court found that no one "transmitted the executed [L]oan [A]greement, or any draft thereof, to the Goodwins prior to the closing of the [SPA]."  *Id.* ¶ 102.  For the reasons discussed above, the Court gives preclusive effect

to these findings. The Court therefore sees no reason in the Complaint, the Loan Agreement, or the bankruptcy court's findings to find that the Goodwins were involved in any of the alleged misrepresentations prior to the execution of the Loan Agreement, particularly with regard to the creation of Annex A-1.

### C.  Plaintiff Has Adequately Pleaded Breach of Fiduciary Duty

Plaintiff's claim for breach of fiduciary duty against the Goodwin Entities is adequately pleaded. Plaintiff alleges that pursuant to the terms of the Loan Agreement, the Goodwin Entities became "trustees and fiduciaries on behalf of [Plaintiff]," SAC ¶ 145, but Defendants contend that any obligations were merely contractual, MOL at 27.  "Under New York law, there must be either 'an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created.'"  *In re Dreier LLP*, 452 B.R. 391, 421 (Bankr. S.D.N.Y. 2011) (quoting *Agudas Chasidei Chabad of U.S. v. Gourary*, 833 F.2d 431, 434 (2d Cir.1987)).  "Under New York law, an express trust must have:  (1) a designated beneficiary; (2) a designated trustee who is not a beneficiary; (3) an identifiable trust *res*; and (4) actual delivery or assignment of the trust *res* with the intent of vesting legal title with the trustee."  *In re Suprema Specialties, Inc.*, 370 B.R. 517 (S.D.N.Y. 2007), *aff'd*, 309 Fed. App'x 526 (2d Cir. 2009).

Plaintiff's allegations are sufficient to plead that the Loan Agreement created a trust on behalf of Plaintiff for Payments received by the Borrowers pursuant to certain contracts.  Section 6.7 of the Loan Agreement states that the Payments made by athletes under the relevant contracts must be placed in a lockbox account and that if one of the Borrowers receives these Payments, they must "hold all such payments in trust for . . . Lender [i.e. Plaintiff] and shall not commingle such payments with any of its other funds or property" until deposited into a lockbox account.  Dkt. No. 370-1 at 40.  The Loan Agreement thus has explicit language creating a trust relationship.  Plaintiff is named as the designated beneficiary, and the Borrowers who receive the Payments in contravention

of the assignment are named as the designated trustees.  The Payments, not to be commingled with

other funds, are the identifiable *res*.  *Comapre In re Suprema Specialties, Inc.*, 370 B.R. 517, 530 (S.D.N.Y.

2007), *aff'd*, 309 Fed. App'x 526 (2d Cir. 2009) ("By expressly permitting Suprema to commingle

alleged trust funds with non-trust assets which, by itself, is fatal to the [s]ureties' claim of an express

trust, the [i]ndemnity [a]greement prevented the identification of the trust *res*." (internal citations

omitted)).  And the SAC alleges that the Borrowers, including the Goodwin Entities, received such

Payments, after which the Goodwin Entities became trustees and fiduciaries.  SAC ¶¶ 6, 7, 91, 97,

145.

The SAC also adequately alleges that the Goodwin Entities "diverted more than three

quarters of the Payments that should have been paid into the [l]ockbox" and "used Payments for

their own purposes, including paying its executives substantial compensation."  SAC ¶ 6.  In so

doing, the Goodwin Entities allegedly "fail[ed] to perform their fiduciary obligations loyally on

behalf of their principal, [Plaintiff], including by failing to place [Plaintiff's] interests in the Payments

above their own and those of their executives."  *Id.* ¶ 147.  The SAC thus adequately states a claim

for breach of fiduciary duty against the Goodwin Entities.

### D.  *Res Judicata* Does Not Bar Plaintiff's Claim for a Constructive Trust

Plaintiff's constructive trust claim is not barred under *res judicata* by the Adversary

Proceeding.  "The doctrine of *res judicata,* or claim preclusion, holds that 'a final judgment on the

merits of an action precludes the parties or their privies from relitigating issues that were or could

have been raised in that action.'"  *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 284–85

(2d Cir. 2000) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).  "To prove the affirmative defense

a party must show that (1) the previous action involved an adjudication on the merits; (2) the

previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the

subsequent action were, or could have been, raised in the prior action."  *Id.* at 285.  In determining

whether a claim was or could have been raised in the prior action, courts assess whether "it involves the same 'transaction' or connected series of transactions as the earlier suit; that is to say, the second cause of action requires the same evidence to support it and is based on facts that were also present in the first." *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997).

Plaintiff's constructive trust claim is not barred by *res judicata* because Plaintiff's claim here arises from a different transaction than that underlying the Trustee's claim in the Adversary Proceeding. Here, Plaintiff has alleged that "[p]ursuant to the Loan Agreement, the Borrowers, including GAME and GSM, promised to keep, in trust for [Plaintiff], all Payments that they received until such Payments were deposited into the Lockbox." SAC ¶ 156. And because Plaintiff alleges that "Defendants have wrongfully diverted funds which rightfully belong to [Plaintiff] as secured creditor," *id.* ¶ 158, "a constructive trust should be imposed upon the bank accounts and assets in the possession, custody, and control of Defendants GAME and GSM," *id.* ¶ 160. Plaintiff's claim here thus arises from the Loan Agreement. By contrast, in the Adversary Proceeding, the Trustee asserted a claim that "the sale of shares in GAME and GSM . . . was validly consummated pursuant to [the SPA] and that [Decade] is thereby the rightful owner of all shares." Declaratory Judgment Opinion ¶ 2. And therefore, the Trustee sought "a constructive trust over any valid GAME and/or GSM shares held by the Goodwins." *Id.* The Trustee's claim for the imposition of a constructive trust in the Adversary Proceeding thus arose under the SPA, a different transaction with different parties than the Loan Agreement. Therefore, Plaintiff's constructive trust claim was not and could not have been raised in the Adversary Proceeding, and *res judicata* does not bar Plaintiff from raising it here.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Second Amended Complaint is GRANTED IN PART and DENIED IN PART. Plaintiff's eleventh cause of action for breach

of the SPA is precluded by the bankruptcy court's findings and therefore dismissed with prejudice.

Plaintiff's fourth cause of action for fraud in the inducement is dismissed as against the Goodwins.

As to Plaintiff's remaining claims, the motion to dismiss is denied.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 382.

SO ORDERED.

Dated: December 20, 2024
New York, New York

_____
GREGORY H. WOODS
United States District Judge